Staples, J.
The testator, Charles C. Smoot, died in the city cf Alexandria on the 31st of July, 1867. By his will, bearing date February 16th, 1858, he devised to his daughter Mary A. Smoot, certain real estate in said city; to his daughters Susannah A. Smoot and Catharine F. Smoot he bequeathed the sum of ten thousand dollars each, to be realized out of his estate, by sale or otherwise, as eai’ly as practicable after his decease; and he directed his executors to invest said legacies in the stocks or bonds of the Commonwealth of Virginia. All the rest of his estate, real and personal, the testator devised and bequeathed to his sons Charles C. Smoot and John B. Smoot, whom he appointed hie executors-. The *246 will was admitted to probate, and the executors qualified in October 1867. The legacy to Susannah A. Smoot has been paid or arranged by the executors. The whole controversy in this case grows out of the failure of the executors to invest the ten thousand dollars given to Catharine if. Smoot, according to the directions of the will.
It is insisted by the. complainants, that the investment ought to have been made as soon as it was practicable after the death of the testator; and that it was practicable so to do, at any time within six months after that period. Hot having made the investment at the time they should have made, it, the executors are answerable for any loss by the subsequent rise in the price of the stock. It is certainly true that where a trustee is required by the terms of the trust to invest in public securities funds in his possession, and instead of doing so, he appropriates them to his own use, or otherwise, unreasonably delays the investment, the cestui que trust has the option of charging him with the principal sum and its interest, or with the amount of stock he might have purchased with the money. And the same rule applies to an executor, who is also a trustee, but having fully administered the estate retains the legacy in his possession, not as assets of the estate, but as trustee of the legacy. In all such eases the trustee or executor is regarded as a wrong doer; and as such, he is compelled to place the injured party in the same situation he would have been in if the wrong had not been done. But, where the executor has.received.no funds for investment, and is required to raise them in the course of his administration, there can be, in the nature of things, no fixed rule as to the time within which the trust is to. be executed. The farthest the courts have gone, is to say. that the investment must be made within a reasonable time. What is a reasonable time depends upon all the *247 circumstances of the case. In one instance a year from the testator’s death was considered a reasonable time for the purchase of United States stock. This rule was adopted in analogy to the payment of legacies. In another case the same period was regarded a reasonable time, although the trustees were directed to invest in the purchase of land with all convenient speed. Perry on Trusts, 462, and cases there cited ; Hill on Trustees 370—371. And under our statutes the executor is not compellable to pay any legacy given by the will, or make distribution, until after a year from the day of his qualification; and even then he can only he required to make such payment or distribution upon being secured by proper refunding bonds.
In this case the executors qualified in October 1867. The estate which came into their hands is estimated by complainants at one hundred and fifty thousand dollars. The commissioner, however, reports it as of the value of sixty-two thousand dollars only. It consisted of real estate vulued at forty-two thousand dollars, the interest of the testator in an unsettled partnership amounting to fifteen thousand dollars, and certain stocks and securities not exceeding four thousand dollars. From such sources the executors were required to raise the large sum of twenty thousand dollars. The testator was well aware of the difficulties they might encounter in carrying out his wishes. He therefore directed that the legacies should be realized out of his estate, not immediately, but by a sale as early as practicable after his decease. He did not intend that his sons should sacrifice the property given to them in paying the legacies to the daughters. He no doubt had entire confidence in the integrity and sound judgment of the former, and it was his purpose they should exercise a fair and liberal discretion in carrying ont his instructions.
*248 I think that discretion has not been abused; -and that the executors were well justified in declining to make the investment. ■ The condition of the State politically and financially from October 1867, to January 1870, when the decree complained of was rendered, is a matter of public history. The reconstruction acts passed in the beginning of the year 1867 declared that no legal Governments existed in the States south. Virginia was denominated Military District Ho. 1, and as such was placed under the control of a General of the Federal Army; her judicial, executive and ministerial’ officers were removed, and their places occupied by Military appointees, and all the departments of the Government, with all the great interests of the State, political and financial, subjected to a Military domination acknowledging no constitutional responsibility. How long this state of things was to continue no one could- foresee. Reflecting men, attentive observers of the times, were profoundly despondent of the future. They believed the termination of the Military power would be followed by the establishment. of a civil Government greatly more disastrous to the prosperity of the State. Whether these fears were well or ill-founded, whether they would have been realized in any event, it is not our province to inquire. It is certain that this condition of things exerted a most depressing influence upon the spirit and temper of the people, upon all the industrial interests of the State, its credit, its business and its progress. The effect upon the credit of the State is apparent from a single fact disclosed by this record, that in 1867 and 1868 State bonds commanded in the market about thirty-eight cents in the dollar only. Capitalists might purchase such securities upon speculation, but few w'ould regard them as safe and judicious investments. The executors no doubt acted upon these views. *249 They wisely abstained from embarking the fortune of their sister in securities which did not and' could not command public confidence, and might at any day become utterly worthless in the commercial world.
All the circumstances and facts of the case tend to show that complainant throughout was informed of the failure of the executors to make the investment. She resided in the same town with them. At the death of the testator she was over twenty-one years of age, and fully competent to understand her rights. If the investment had been made, the bonds would have been in her possession, and the interest collected from the State by her authority alone. But iustead of this she recieves from the executors annually a sum or sums equal to the yearly interest upon the amount of her legacy. She received the payments without objection or complaint, although she must have been apprized they were made by the executors as borrowers of the fund due her. In Byrchall or Bradfield, 6 Mad. B. 148, cited by complainant’s counsel, Sir John Leach directed an enquiry by a commissioner to ascertain whether the legatees were informed at any time that the executor had retained the legacy in his hands. It apqieared that he had so retained it for ten years, paying intererest to the cestui que trust under a representation that the legacy had been invested according to the trusts. Under these circumstances the executor was required to furnish the stock which might have been purchased when the investment ought to have been made. It is fair to presume a different decision would have been made, if it had appeared that the cestui que trust had acceqited the interest knowing the funds were retained by the executor. In such case he would be treated as a borrower and not as a wrong doer. In this ease there is nothing to impeach the good faith of the executors. Their conduct throughout evinced a desire to per *250 form the duties imposed by the will, with a due regard to the interest of all the legatees.
For these reasons I am of the opinion the decree should he affirmed.
The other judges concurred in the opinion of Staples, J.
Deoree affirmed.